*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 08/16/2005)

[1] UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[2] No. 02-56818

[3] 420 F.3d 897, 2005 Daily Journal D.A.R. 9940, 05 Cal. Daily Op. Serv. 7270, 2005.C09.0003244<br>http://www.versuslaw.com

[4] August 16, 2005

[5] DAVID DIAZ, PLAINTIFF-APPELLANT v. DARYL GATES, et al., DEFENDANTS-APPELLEES

[6] Appeal from the United States District Court for the Central District of California, Gary A. Feess, District Judge, Presiding, D.C. No. CV-01-06400-GAF

[11] FOR PUBLICATION

[15] Per Curiam Opinion; Concurrence by Judge Reinhardt; Concurrence by Judge Kleinfeld; Concurrence by Judge Berzon; Dissent by Judge Gould [Seven judges voted with the majority and four dissented.]

[16] OPINION

[17] We examine whether a false imprisonment that caused the victim to lose employment and employment opportunities is an injury to "business or property" within the meaning of RICO.

[18] Facts

[19] Diaz claims to be a victim of the Los Angeles Police Department's infamous Rampart scandal. He sued over two hundred people connected with the Los Angeles Police Department (LAPD) or Los Angeles city government under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, alleging that LAPD officers had "fabricated evidence" that he had committed assault with a deadly weapon, and that they had tampered with witnesses and conspired to obtain [a] false conviction against him." Compl. ¶ 16. As a consequence, Diaz claims, "among other forms of injury, [he] lost employment, employment opportunities and the wages and other compensation associated with said business employment and opportunities in that [he] was rendered unable to pursue gainful employment while defending himself [...]

[20] Defendants moved to dismiss, arguing, among other things, that Diaz lacked standing because he did not allege an injury to business or property required by RICO. See 18 U.S.C. § 1964(c). The district judge agreed and dismissed without prejudice and with leave to amend. Diaz did not amend and the district judge then dismissed with prejudice. A divided panel of our court affirmed. We took the case en banc.

[21] Analysis

[23] ... We decided in *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002), where a class of agricultural laborers alleged that their employers depressed their wages by illegally hiring undocumented workers at below-market wages. Even they did allege an injury to property interest, the "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." We held this property interest sufficient to provide standing under RICO. Diaz has alleged just such an interference with his business relations.

[31] ... Without a harm to a specific business or property interest — a categorical inquiry typically determined by reference to state law — there is no injury to business or property within the meaning of RICO.

[32] ... [Diaz] has alleged both the property interest and the financial loss. The harms he alleges amount to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law. And his claimed financial loss? He could not fulfill his employment contract or pursue valuable employment opportunities because he was in jail.

[33] ... *Mendoza* speaks generally of a "legal entitlement to business relations." ... California law protects the legal entitlement to both current and prospective contractual relations. ... There may be a practical difference between current and future employment for purposes of RICO — for instance,

## RICO Applied To "Racketerring" Type Activity Resulting In A Wrongful Conviction

Over 100 convictions based on evidence gathered by the Los Angeles Police Department's Ramparts anti-gang unit were vacated in the several years after it was publicly disclosed in the summer of 1999, that the unit engaged in the wholesale framing of innocent defendants by tactics that included planting weapons on injured but unarmed suspects, and filing false reports based on either fabricated or embellished events. Many of those wrongly convicted people filed a civil suit naming the LAPD, the City of Los Angeles, and responsible parties as a defendant. Over $70 million in damages has been paid to plaintiffs in those suits. (See, Wrongly Convicted Man Crippled By Police Awarded $6.5 Million, *Justice:Denied*, Summer 2005, Issue 29, p. 11)

David Diaz took a different tack. He filed a suit under the federal RICO statute "alleging that LAPD officers had "fabricated evidence" that he had committed assault with a deadly weapon, and that they had "tampered with witnesses and conspired to obtain [a] false conviction" against him." He alleged that the LAPD's activity constituted a pattern of "racketeering activity" actionable under the RICO statute, and for which the LAPD would be liable for treble damages.

The U.S. District Court judge dismissed Diaz's suit after ruling he lacked standing under the RICO statutes. Diaz appealed to the federal Ninth Circuit Court of Appeals. On August 16, 2005 the Ninth Circuit ruled en banc that Diaz had standing to file suit against the LAPD under the RICO statute. This decision potentially has far reaching implications for wrongly convicted persons in the Ninth Circuit, and people in other federal circuits may find it worth considering to pursue a similar course of action in their circuit. Because of its implications, *Justice:Denied* is publishing a 2,000-word condensed version of the 11,000 word decision from which the reader can understand the gist of the Court's reasoning. Excerpts from Judge Kleinfeld's concurring opinion are also included. The full decision is available for free downloading or printing at: http://justicedenied.org/cases/diaz.htm

it may be easier to prove causation or determine damages for a plaintiff who has lost current employment — but this difference is not relevant to whether there was an injury to "business or property."

[34] ... The only requirement for RICO standing is that one be a "person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). And the Supreme Court has already told us that "by reason of" incorporates a proximate cause standard, see *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-68 (1992), which is generous enough to include the unintended, though foreseeable, consequences of RICO predicate acts. ...

[35] ... In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), the Supreme Court ... [determined] "Racketeering activity" is a broad concept, which "consists of no more and no less than commission of a predicate act." *Id.* at 495.

[36] "If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement." *Id.* at 495.

[38] ... The statute is broad, but that is the statute we have. Were the standard as the dissent claims, we would have the anomalous result that one could be liable under RICO for destroying a business if one aimed a bomb at it, but not if one aimed at the business owner, missed and hit the business by accident, or if one aimed at the

RICO cont. on p. 25

**RICO cont. from p. 24**

business owner who happened to be in the business at the time.

[40] We do not hold that plaintiffs may never recover under RICO for the loss of employment opportunities. We merely hold that the appellants cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim.

[41] ... Diaz suffered two types of injuries: (1) the personal injury of false imprisonment and (2) the property injury of interference with current or prospective contractual relations. Treating the two as separate, and denying recovery for the first but letting the suit go forward on the second, is both analytically cleaner and truer to the language of the statute.

[42] ... If Diaz properly alleges that his injuries were "by reason of a violation of section 1962," there is nothing to prevent him from "su[ing] therefor." See 18 U.S.C. § 1964(c). Diaz's complaint tracks the language of section 1962, which makes it illegal to, among other things, acquire or maintain control of an "enterprise," or conduct or participate in its affairs, through a "pattern of racketeering activity." ...

[44] ... We may not know precisely what type of employment Diaz alleges to have lost, but we know that Diaz alleges that his lost employment is an injury to a property interest as defined by state law. ...

[45] LAPD and various subdivisions are "enterprises" within the meaning of 18 U.S.C. § 1961(4); ... And he alleges acts that seem to fall within the definition of "racketeering activity," 18 U.S.C. § 1961(1), and seem to form a "pattern," id. § 1961(5).

[46] Whether these allegations of section 1962 violations are adequate is a matter on which we express no view. ... Now that we have set aside the district court's ruling as to standing, the district judge should, if he wishes to reinstate the order of dismissal, identify the specific deficiencies in a supplementary order, and plaintiff should then be given an opportunity to amend his complaint accordingly.

[47] REVERSED AND REMANDED.

[50] KLEINFELD, Circuit Judge, ... concurring:

[53] The RICO statute tells us what kinds of injuries give rise to RICO claims. ... The section stating what gives rise to a claim, section 1964, says "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." ...

[54] Section 1962, which section 1964 tells us defines the violations giving rise to civil claims, says "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

[59] Murder or kidnapping can cause injury to business or property, as well as personal injury. Suppose America suffered the frequent kidnapping for ransom of business executives that some countries do. If the business pays the ransom, it has been injured by the kidnapping. Or imagine that a person whom a business needs to function is murdered – perhaps a medical researcher who employs himself through an incorporated laboratory and obtains millions of dollars in research grants and contracts, and employs dozens of other people. The murder may well destroy the business, make it unable to pay its debts, and put all the employees out of work, giving them claims against the business for breach of their employment contracts. The laboratory corporation is a "person injured in his business" "by reason of" a section 1962 violation – murder. In these hypotheticals, I assume, of course, that a racketeering enterprise committed the wrongful conduct and that the section 1962 conduct caused the harm. The significance of the hypothetical cases is to illustrate that section 1962 personal injuries, such as murder and kidnapping, may indeed give rise to "injury to business or property" under section 1964.

[60] Diaz's claim to be a "person injured in his business or property" is more tenuous than the victims' claims in these hypothetical cases, but sufficient nonetheless. He pleads that, as a result of the putative RICO wrong, he lost the chance to get employment because he was in jail or absorbed with defending himself against the criminal charges he claims were the fraudulent result of police racketeering. That states a claim that he was "injured in his business."

[61] A person does not have to wear a suit and tie to be engaged in "business." A salaried employee might or might not, in ordinary speech, be characterized as a "businessman," but a sole proprietor of a service business unquestionably runs a "business." For example, the owner of "AAA Snowplowing" is a businessman who owns a service business and makes his living from it when he comes around with a blade on the front of his pickup truck after a snowfall. Dentists and lawyers are also businessmen who own and run businesses. So is a person who stands on a corner and waits to get picked up to do odd jobs as an independent contractor. There is no principled way to sort out who among sole proprietors has a "business" and who does not. They all do.

[63] The manifest statutory purpose of requiring not only injury "by reason of" section 1962 misconduct, but also injury to "business or property," is to exclude claims for other kinds of injuries, even those arising from denoted racketeering conduct. For example, a person who suffered physical injury and mental distress, but no injury to his business or property, on account of racketeering misconduct of the sort denoted in sections 1962 and 1961, could not state a claim upon which relief could be granted under section 1964. ...

[65] ... Though the RICO statute allows treble damages, the damages it allows, and allows to be trebled, are limited to injury to business or property. That limitation, particularly in light of the limited business and property of a considerable proportion of persons who are arrested, makes section 1983 a more attractive path for relief in most cases ...

[66] ... [W]ho can hear the word "RICO" without seeing in the mind's eye, Edward G. Robinson, in *Little Caesar*? But the Supreme Court has decided that RICO's statutory language just does not permit the courts to limit it to dishonest businesses that make their money through fraud and extortion. When it was passed, many ascribed to RICO the purpose of facilitating remedies against mobsters and organized criminals. As the Supreme Court has construed the words of the statute since then, though, there is no way to corral RICO so that it would apply only to "racketeering" as that word may initially have been understood and as it is defined in the dictionary.

| | | |
|---|---|---|
| STATE OF OHIO | ) | AFFIDAVIT OF PREVIOUS CASES OF WHICH I AM FULLY AWARE, and JUDICIAL |
| | ) SS: | JURY TAMPERING. Note: Court-Appointed Attorneys may have initiated |
| RICHLAND COUNTY | ) | exparte/inabsentia SECRET TRIBUNALS without my knowledge or consent. |

**#1993-CA-36-A** US4thCA <u>Merlo v United Way</u> &Transamerican Occidental Life w/<u>collusive</u> trials by Clinton Attorneys in Pa.(TomRidge)for LaborSec.LizDole,ElaineChao,RedCross,FBI,IRS, and U.S.Treasury in GHWBush Presidential Cover-Up of 1990Aramony/NewEra UnitedWayFEMA debacle.
**#93003** HolmesCoJuvCt <u>Ohio v Beckers</u> 5 children are State-Kidnapped to obtain 170acre farm. Warrantless Raids, exparte court-orders w/o hearings,J.Hines violates caseplan to reunify, divides family into 4 groups to physically remove from farm 1/19/93 **Martin Luther King Day** Children caught between jurisdictions,herd disposal,clerks refuse filings & record access, Multiple United Way Federal Emergency Management Agencys refuse services & falsify records (FEMA now a division of Homeland Security under Tom Ridge) **ALL PARENTAL RIGHTS TERMINATED.**
**#NoCase** CuyCoDomRel J.Russo,Flanagan,Celebrezze,Polito: Clerks refuse to file or docket. Denial of access to courts falsely purports Beckers being "held for trial" in Holmes Jail!
**#D-149878** CuyCoDomRel J.Gallagher. Secret adoption or divorce proceedings by T.Dawson, may have been withdrawn when judge discovered or refused to preside over United Way Kidnapping
**#1994-CA-0497** Holmes5thCA J.Hoffman,Wise,Reader AFFIRM nothing about #93003 or the changed circumstances,best interests,completed 1yr.caseplan or reality;implys divorce/indictments, gave emergency-visitation,parental rights,custody case a 1yr.calender and stalled; refused childrens return,Beckers PAID $15Kback-taxes,<u>NO FORECLOSURE by Prosecutor!</u> **April 1st, 1994** Stonewalled in state courts, under siege by Holmes County, conspiracy caught in own trap!
**#5-1994-CV-2294** AkronUSDC <u>Beckers v Holmes County Human Services</u>,TRICKorTREAT? <u>Oct.31,1994</u> J.Dowd,Hemann; Pros/Sheriff,DogWarden,United Way Millersburg Counseling Center,ODOJ&FSgals United Way Residential Support Svcs,CantonDistH&HS,J.Hines,Lee,Strauss. STING set 5/3/1995
**#95-11154-50/51/52/1118719** T.Dawson (above $31mil suit) dies evening before <u>April 1st,1995</u> CuyCoProbate gives Family Allotment Withdrawal Restrictions to HolmesCoProbate to control:
**#1995-CRB-250** HolmesCoCt <u>Sheriff v Becker</u> J.Irving(Pros.exwife) <u>Animals at Large § 951.02</u>, CountyJudge appointed TemporaryCommonPleasMagistrate,PoliceChiefJuryForeman,&ClerkWitness, NoAttorney,obtains Felony convictions w/misdemeanor trials,10days jail for multi-BLANK BCI -FBIforms w/prints&signatures,& 1yr.Probation for <u>Complaint after hearing §2151.44</u> 8/10/95
**#1995-CVI-355** <u>Commercial Savings Bank & E.Holmes Vet Clinic v Dorothy Becker</u> J.JaneIrving, Small Claims Court used to obtain unknown Felony pleas from Mrs.Becker from 10/20- 12/6/95
**#1996-CR-91** MentorMuniCt <u>City of Mentor on the Lake v Becker</u> J.Swain(QUIT),Forbes,Trebets: Affiant accidentally arrested on stage during nightclub concert performance, 120mi. out of Holmes Co. w/out-of-state Ohio State Highway Patrol APB LEADS/NCIC but **NO WARRANT!** 1/22/96 UnitedWayLakeCo.Pros&Ct-Appt-Atty,falsified jail records,Court orders return Holmes 3/9/96
**#1996-CA-551** Holmes5thCA <u>Sheriff v Becker</u> REVERSES <u>Animals at Large</u> LoosePonyConviction, & refuses pro se appeal,appoints corrupt $5K attorney for corrupt new trial. (Still Waiting)
**#97-1453** OhSupCt J.Moyer sees NoConstitutionalQuestion w/above 1st,5th, 6thAmendViolations.
**#98-AMD-203-7002056013** HolmesCSEA secret DNA test declares Becker child a bastard, to keep child born during Becker marriage out of court, off records. Files whited-out, CAUSES the:
**#1998-CRB-222** HolmesCoCt <u>Becker v Becker</u> J.Irving <u>DIVIDE and CONQUER Protection Order</u> used trying to trigger STING, try to explain SUSPENSION of Affiants RIGHT to bear arms, set-up:
**#1998-DR-039** HolmesCoCommPleas <u>Becker v Becker</u> J.White uses the divorce to attack,provoke& dismantle Becker farm,no attorneys,no visitation,no property Div/Protection,no alimony,ALL motions DENIED. White **ORDERS CHILD-SUPPORT WITHOUT RE-INSTATING RESIDUAL PARENTAL RIGHTS.**
**#NoCase** Cleveland Police arrest Affiant 2 hrs. shown above suit, RELEASED, had **NO WARRANT!**
**#98-DV-064** SEOLS attys push Dorothy into attacking Affiant for domestic violence arrests.
**#98-CA-015** Holmes5thCA <u>Becker v White</u> Stonewalls,refuses J.White removal to trigger STING.
**#98-CRA-027292-A** ClevoMuniCt <u>Cleveland v Becker</u> J.Perk,Calandra: 30 armed ROPES* Team RAID *Ruthlessly Oppressing Philanthropic Enemies Severely... OSHP APB with **NO WARRANT!** 7/17/98 Witnesses & legal materials locked out of court, nolled & dismissed,then Sheriff-kidnapped 75mi.w/o extradition or attorney,incommunicado to trigger STING. **1st Part DOUBLE JEOPARDY**
**#98-3350** AkronUSDC/6thCA conspiring clerks refuse fee, DENY reopen&appeal of #5-94-CV-2294 and forge ORDERS to lure Affiant to Akron for Pros.Maureen O'Connor false-arrest. 10/30/98
**#NoCase** Affiant accidentally arrested in KnoxCo. w/OSHP APB **NO WARRANT!** Kidnapped Holmes.
**#99CVG-55** Forced by SEOLS&Holmes to EVICT Dorothy & Grandchildren to secure farm, stripped to trigger sting,$17K theft,CrimComplaint against Dorothy manipulated to prosecute Affiant w/his own traumatized, destroyed family; unable to prosecute UnitedWay criminally,he SUES:

#1-1999-CV-733 ClevoUSDC Becker v Clinton J.Nugent,Streepy;Gore,Reno Filed April 1st,1999
Hillary,Bennet,Kendall,Ruff,Bruer,Ken Starr(fmrGHWBushSolicitorGeneral)LegalServicesCorp,
United Way of America,Clevo&Mt.VernonPolice,CuyCo&KnoxCoSheriffs,SEOLS,HolmesJ.White,Lee,
Ginsburg,Irving,FBI,IRS,U.S.Attys.Mills. DISMISSED by Clinton Judicial-Appointee 5/17/99
#1999-1541 U.S.Supreme Court Becker v White CERTIORARI DENIED to allow another attempt to
trigger the STING, or permanent false-incarceration for United Way. The Court is informed
of Gore complicity,setting the stage for JebBush&KathrineHarris "THROWING" 2000 election.
#1999-3811 US6thCA Becker v Clinton J.Ryan,Boggs,Duggan; AFFIRMED while in jail 6/20/2000
#2000-CRA-014807 ClevoMuniCt Cleveland v Becker J.Cooney,Zone #2ndPart of Double Jeopardy
30armedROPES*Team,Ohio State Highway Patrol APB, NO WARRANT, Sheriff-KIDNAPPED 75mi. Held
incommunicado 4months so above appeal"DISMISSED FOR LACK OF PROSECUTION"to trigger STING.
Then falsely-incarcerated for 3 YEARS NOW on this "nolled and dismissed" arrest. 5/5/2000
#2000-CR-040 Holmes5thCA J.Edwards,Boggins,Hoffman AFFIRM denial of all parental rights.
#2000-CR-02784-SO ClevoUSDC Becker v Ohio State Legal Services J.Oliver,Perelman 11/2/02
"Bush Special Interests"set-uparrests,fabricate criminal charges,suspend drivers license,
stop credit cards:ClevoBuildingInspectors,MayorMichaelWhite,MartinFlask,SgtMarkHarrisQUIT
MBNA-AlLerner(HomelandSecurity)ODOJ&FS,GeneScreenDNAtest,COLDATA,Transunion,NAFPL, SEOLS,
LouisFreehQUIT,IndependantCounselRobertRayQUIT,CuyCo&ClevoBarAss,J.Satula,Black,O'Donnell
Resnick,Cook,OhAttyGenUnitedWayCrimeVictServices,NationalServiceCorp,AmericorpsAttorneys,
2002UtahOlympicCommittee(1996AtlantaBrianGallagherUnitedWayOlympics)ClintonJudgeDISMISSED
#2000-CR-040 HolmesCoCommPleas Ohio v Becker J.White tampers w/jury in deliberations, to
trigger STING. Brady violations, 2 "packed"jurys,Dr.SuzanneLeSurePerjury. Convicted3/2/01
#2000-CA-0006 Holmes5thCA J.Edwards,Boggins,Gwin: AFFIRM another United Way Atrocity. The
sentences reflect other unknown convictions they must also have presided over. 12/20/2001
#2001-CA-3004 US6thCA Becker v Ohio State Legal Services J.Siler,Clay,Graham; AFFIRM after
7 months of 23hr.lockdown unable to file to trigger STING. Half Cinci6thCirJustices RESIGN
#2002-CVH-03-2758 FranklinCoCommPleas Becker v Ohio State Highway Patrol J.Travis gives
mandamus one-year case-plan to trigger STING. Filed 3/2/02 FINAL APPEALABLE ORDER 7/23/02
(Under Ohio Law, ONLY the judge who corrupted a case can order the records to resolve it?)
#2002-CA-177 OhSupCt Ohio v Becker J.Moyer sees no Constitutional grounds to appeal.5/1/02
#2002-APE-08-918 Franklin10thCA State exrel Becker v Ohio State Highway Patrol J.Tyack and
#2002-APE-08-921-Dismissed9/17/02 Clerks refused to file appeal in timelimit,sent 2nd,then
were forced to file both, DISMISSED by United Way of Central Ohio Judges for their former
President Brian Gallagher, now of United Way of America. This denied Constitutional Rights
to know WHAT ARRESTED, TRIED, & CONVICTED OF SINCE 1993 with OSHP APBs on NCIC and LEADS.
J.Brown,Klatt,Petree "FIXED" appeal after OSHP Trooper Kevin Smith grills Becker in prison
day of decision since appeal would preclude STING. AFFIRMED 3/25/03 BEFORE April 1st,2003
#2002-L-138 Lake11thCA Mentor-on-the-Lake v Becker J.Christley,O'Neil,Ford Filed: 9/16/02
1996 Delayed Appeal was DISMISSED 1/2/2003 when STING wasn't triggered on New Years Day!
#2003-8233 Cuy8thCA Cleveland v Becker J.Corrigan,Dyke Delayed ROPES*false-arrest appeals.
Clerks repeatedly refuse both appeals, then only file ONE. DENIED 2/14/03 Valentines Day!
BUSH INVADES IRAQ EXACTLY 14days "Pre-Emptive" to STING being triggered on April 1st,2003.
Bush is STILL explaining this one! Invisible WMDs or his Weapon of Mass Delusion in Ohio?
#NoCase OhSupCt Becker v OSHP Clerks held past time limit and returned. 5/1/03 and 5/12/03
Mailroom refused to certify legalmail w/ AFFIDAVIT OF HOW UNITED WAY STARTED THE IRAQ WAR
#2003-CV-0716-D RichlandCoCommPleas Becker v Bradshaw etal. J.DeWeese 150pg. Habeas Corpus
26groundsForRelease,CriminalComplaints:Warden&Admin w/FalsifiedDoublePrisonRecords 7/28/03
United Way State of Ohio Combined Charitable Campaign Retaliation&Retribution RAID 14days
later:MangledManualTypewriter&ConfiscatedLegalMaterials to trigger sting.$31mil(each) RICO
DEMANDS,GrievancesDismissed. Case"FIXED"for United Way by previously sued judge. 11/24/03
#2003-CV-0177 Richland5thCA Becker v Bradshaw etal TREBLE RICO SANCTIONS! 12/22/03 Pending
Sworn and subscribed in my presence (Dismissed)  These are all the cases I have access to
on this ___20th___ January Tues, 2004.          on this Martin Luther King Jr. Day,2004.

Notary Public

JOHN O. BABAJIDE
Notary Public State of Ohio
My Certificate Expires May 15, 2006

SEAL

Mr. Jan F. Becker #A399-713 pro se
P.O.Box 788,Mansfield Correctional Inst.
Mansfield, Ohio 44901

**Note:** Defense Attorneys are threatened with mistrial, if the jurors should find out that Becker had previously sued Judge White, and the United States Supreme Court had refused to remove judge from case.

The Assistant Prosecutor's brother picks the jurys.

This "trial" completes the Double Jeopardy. Becker was never told or appeared at the first one, conducted by his Court-Appointed Attorneys and United Way co-conspiritors.

Now, all records of the first "trial" documented in the fullest to appear real, must disappear from Beckers Rap Sheet and Criminal History Records.

The process used by the jury was in error, they were to decide the case on the merits of the evidence, not on the threats of a judge with conflicting interests who tampered with a packed jury.

When they asked what they should do if they were unable to come to a unanimous verdict on some of the counts, the members were instructed of their ability to rule on each count independent of the others.

Shortly before 11 p.m. the jury's request to see the victims' testimony was denied because of the absence of a transcript.

At the same time, they asked if a hung jury was an option. They were encouraged look closely at their individual positions and to try to come to a verdict, and the jury's forewoman said she believed their was a chance the members would be able to reach a verdict.

> At 1:15 a.m. the final question was posed and the judge reinstructed the members of the jury on the definition of sexual battery.

Throughout the five-day trial, the first day of which was consumed by jury selection, testimony was heard from many witnesses brought in by the state and the defense.

The three women told the jury of countless occasions of sexual abuse at the hands of Becker. A psychologist reported the women all displayed characteristics consistent with being sexually abused. And, Becker argued the charges against him were filed as part of a conspiracy to deny him visitation with his young children and force abandonment of several civil suits he has filed against Holmes County.

> Ironically, the eight charges about which the women testified in the greatest detail were among those of which Becker was acquitted. While the charges spanned a period from 1988 to 1995, all of the charge for which Becker was convicted occurred prior to 1993.

"We respect and accept (the jury's verdict)," said Assistant Prosecutor Steve Knowling. "The jury had a very difficult case, from their perspective, to decide. It is always difficult (to judge the facts) in delayed reporting of sexual abuse cases. (Without physical evidence and eyewitness testimony), it always comes down to the statements of the victims and the defendant, when he takes the stand, as he did in this case."

Becker's attorney, Bob Dixon, did not comment at length about the verdict, but said the conviction eventually would be appealed.

A sexual predator hearing and sentencing for Becker have yet

At least two planted jurors still slipped in to influence the others.

White dismisses stenographer, so no records.

White orders his planted jurors not to risk a hung jury and a fourth "trial".

White takes a manila envelope and locks himself in jury room.

White shows jury Taylor v. Ohio, another lawsuit with police informant Juror #4 Defendant.

Jury finds Becker INNOCENT of ALL CHARGES to this point. Signed in pen.

Judge White inflamed and threatened the Jury into thinking they would fall VICTIM of the next Becker lawsuit, they had to PROTECT THEMSELVES by CONVICTION.

White sentences as if second conviction.
http://www.the-daily-record.com/past_issues/02_feb/010204dr1.html
White orders United Way Counseling to monitor jury.

3 Life Sentences For United Way...




# Ohio Bureau of
# Criminal Identification & Investigation
## Office of the Attorney General

**Betty D. Montgomery**
Attorney General

**Ted Almay**
Superintendent

July 9, 2002

Jan F. Becker #399-713
P. O. Box 788
Mansfield, Ohio 44901

RE: Criminal History Record

Dear Mr. Becker,

Please be advised that the BCI number C009412 has been deleted from our files, and all information was combined onto one record. BCI number C055805 is now the record number.

Wilma D. Sigler

*Wilma D. Sigler*
Identification Supervisor

**Note:** To hide 5 false-arrests, the **SECRET TRIBUNALS** (Pros,Judges,Court-Appt.Attys) and **SECRET TRIBUNAL CONVICTIONS**, BCI cut-n-pasted a new CRIMINAL HISTORY RECORD to delete all but a "Current conviction" under a new BCI number. The FBI was forced to copy that to maintain false-imprisonmnet. This violation of checks-n-balances proves multiple lawsuits/false-arrests, since they deleted their very existence!
   BOTH BCI#C009412 and FBI#366101JB4 date BACK TO the "LoosePonyConviction" of 1995-1996, even though the first and only entry is now listed as being in 2001!
   Holmes Co. and the Ohio State Highway Patrol could NEVER arrest Becker with a legal warrant! They could not tell him he was a Felon. He was informed of a 1yr. probation in 1995, but under O.R.C.§2951(A), they could not issue a warrant against a Felon "serving" 5yrs. probation, and THAT had to be deleted from the records too!
   The STING was originally set because Becker lawsuit #5-1994-CV-2294 had stopped the court-conspiracy, and any prosecution needed to know how Holmes Co. could have possibly completed the **SECRET TRIBUNALS** and false-convictions without telling the Beckers, while exposing new conspirators and increasing liability considerably.
   In completing the sham-convictions, Holmes Co. put so much pressure on the Becker Family that it triggered new chains of the United Way Conspiracy which have yet to ripen for prosecution, in the interests of Justice in the United States.



*An Internationally Accredited Law Enforcement Agency*    P.O. Box 365, London, Ohio 43140
(740) 845-2000  FAX (740) 845-2020

*An Equal Opportunity Employer*

# Government argues to uphold warrantless surveillance program

SAT, Oct. 14, 2006 Wooster, Ohio Daily Record

DETROIT (AP) — The Justice Department on Friday asked a federal appeals court to throw out a lower court decision that said the Bush administration's warrantless surveillance program is unconstitutional.

The president has said the program is needed in the war on terrorism. Opponents argue it oversteps constitutional boundaries on free speech, privacy and executive powers.

U.S. District Judge Anna Diggs Taylor in Detroit ruled Aug. 17 that the program violates the rights to free speech and privacy and the separation of powers.



Vol. 11

Saturday, October 7, 2006

# Court allows government to keep surveillance for now

MANCI LEGAL SERVICE DEPT

Note: Judge Taylor is a corrupt United Way of S.E.Michigan Co-Chair of Community Services Conspirator!

**Daily Legal News**

**By DAN SEWELL**
Associated Press Writer

CINCINNATI (AP) — The Bush administration may continue its warrantless surveillance program while it appeals a judge's ruling that the program is unconstitutional, a federal appeals court ruled Wednesday.

The president says the program is needed in the war on terrorism; opponents say it oversteps constitutional boundaries on free speech, privacy and executive powers.

The unanimous ruling by a three-judge panel of the 6th U.S. Circuit Court of Appeals allows the program to continue during the appeal, which could take months.

In their brief order, the judges said they balanced the likelihood of success of an appeal, the potential damage to either side and the public interest.

The American Civil Liberties Union, which filed the lawsuit challenging the program in January, said it hopes for a ruling by the end of the year.

"We are confident that when the 6th Circuit addresses the merits of this case, it will agree that warrantless wiretapping of Americans violates the law and is unconstitutional," Melissa Goodman, an ACLU attorney, said in a news release.

Deputy White House press secretary Dana Perino said the president views the program as critical to preventing terrorist attacks.

"We are pleased to see that it will be allowed to continue while the Court of Appeals examines the trial court's decision, with which we strongly disagree," Perino said.

The appeal on the merits wouldn't necessarily go to the same three-judge panel that granted the stay Wednesday: Julia Smith Gibbons, a Bush appointee; Ronald Lee Gilman, appointed by President Bill Clinton; and Alice M. Batchelder, appointed to the court by President George H.W. Bush.

U.S. District Judge Anna Diggs Taylor in Detroit ruled Aug. 17 that the program, which targets communications between people in the U.S. and people overseas with a suspected link to terrorism, is unconstitutional. She refused Sept. 28 to postpone her ruling during appeals, but gave the government a week to ask the 6th Circuit to halt it from taking effect.

The Justice Department had urged the appeals court to allow it to keep the program in place while it appeals, claiming that the nation faced "potential irreparable harm."

"The country will be more vulnerable to a terrorist attack," the government motion said.

The Justice Department is challenging Taylor's ruling that the effort, which it calls the Terrorist Surveillance Program, violates the rights to free speech and privacy, as well as the separation of powers in the Constitution.

The White House says the surveillance is a key tool in the fight against terrorism and has already helped prevent attacks.

The American Civil Liberties Union filed the suit behalf of journalists, scholars and lawyers who say the program of warrantless wiretaps of phone and Internet communication has made it difficult for them to do their jobs because they believe many of their overseas contacts are likely targets. Many said they had been forced to take

Surveillance Continues on Page 2

Surveillance Continued from Page 1

expensive and time-consuming overseas trips because their contacts wouldn't speak openly on the phone or because they didn't want to violate their contacts' confidentiality.

Similar lawsuits challenging the program have been filed by other groups, including in New York and San Francisco. Taylor, appointed by President Jimmy Carter, was the first judge to rule the National Security Agency program unconstitutional. The issue could wind up before the U.S. Supreme Court.

President Bush has said he strongly disagrees with Taylor's August decision, saying those who support her view "simply do not understand the nature of the world in which we live."

"This country of ours is at war," the president said the day after her ruling. "And we must give those whose responsibility it is to protect the United States the tools necessary to protect this country in a time of war."

In her ruling, Taylor said the Bush administration appeared to be saying the president had the "inherent power" to violate laws of Congress.

"There are no hereditary kings in America and no powers not created by the Constitution. So all 'inherent powers' must derive from that Constitution," Taylor wrote in a 43-page opinion. "The public interest is clear, in this matter. It is the upholding of our Constitution."

The ACLU says the 1978 Foreign Intelligence Surveillance Act, which set up a secret court to grant warrants for such surveillance, gave the government enough tools to monitor suspected terrorists.

"Every time the NSA engages in warrantless wiretapping, they are violating the law and the United States Constitution," ACLU attorney Melissa Goodman said last month.

The government says it can't always wait for a court to take action. It says the NSA program is well within the president's authority but proving that would require revealing state secrets.



Doonesbury Fri. Sept. 1, 2006 NJ




